IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRANDY L. WILKERSON,
        Plaintiff,

v.      2: 14-cv-456

COMMISSIONER OF SOCIAL SECURITY,
        Defendant.

MEMORANDUM and ORDER

Mitchell, M.J.:

    Presently before the Court for disposition are cross motions for summary judgment. For the reasons that follow the plaintiff's motion (ECF.No.11) will be DENIED; the defendant's motion (ECF No.13) will be GRANTED and the decision of the Commissioner will be AFFIRMED.

    On April 10, 2014, Brandy L. Wilkerson, by her counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing her claim for a period of disability or for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423.

    On February 25, 2011, the plaintiff filed an application for disability benefits alleging that she had been disabled since February 1, 2011 (R.127-128), and benefits were denied on June 1, 2011 (R.68-72). On June 11, 2011, the plaintiff requested a hearing (R.73) and pursuant to that request a hearing was held on August 2, 2012 (R.27-58). In a decision dated September 24, 2012, benefits were denied (R.8-21), and on November 28, 2012, reconsideration was requested (R.7). Upon reconsideration and in a decision dated February 28, 2014, the Appeals Council affirmed the prior determination (R.1-3). The instant complaint was filed on April 10, 2014.

    In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of

1

the Commissioner that the plaintiff failed to sustain her burden of demonstrating that she was disabled within the meaning of the Social Security Act.

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Comm'r. 529 F.3d 198 (3d Cir.2008). The court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999).

At the hearing held on August 2, 2012, (R.27-58), the plaintiff appeared with counsel (R.29) and testified that she was born on September 7, 1976 (R.32); that she is married and has three children (R.32); that she has a high school education and EMT training (R.34); that she worked as an aide in a nursing facility (R.34) and that she wanted to return to light work but the facility would not permit it (R.36).

The plaintiff also testified that she experiences continuing back and leg pain (R.35,38); that she was involved in a car accident in December 2011 which worsened her condition (R.37); that she takes medication and attends physical therapy (R.39); that she lays down three or four times a day for about an hour (R.40,46); that she can sit for about one to one and a half hours (R.44); that she can stand for twenty to thirty minutes (R.45); that she can walk about fifty yards (R.45); that she can lift about five pounds (R.45) and that one or two days a week she cannot do anything (R.49).

At the hearing a vocational expert was called upon to testify (R.52-57). She described the plaintiff's former employment as medium exertional semi-skilled work (R.53). When asked to assume an individual of the plaintiff's age, education and prior work experience who is restricted to light work, the witness testified that such an individual could not perform the plaintiff's prior work (R.53-54). However, she also testified that such an individual could perform a wide range of jobs which exist in the national economy provided she could work an eight hour day (R.54-55). However, with the limitations the plaintiff described, the witness testified she could not be employed (R.56).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was not disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed.

A cystourethroscopy and bilateral retrograde pyelogram were performed on January 29, 2010. It was believed that she had passed a kidney stone (R.249-253).

The plaintiff was treated for sacroiliitis and lumbosacral somatic dysfunction between February 2, 2010 and November 4, 2010. Steroid injections were provided (R.229-246).

The plaintiff was treated at the UPMC Horizon emergency room between January 18, 2010 and December 20, 2010 for chronic back pain for which a myelogram was performed, headaches, a dental abscess and a lumbar strain (R. 254-329).

The plaintiff received treatment at UPMC Neurological Surgery between August 17, 2010 and March 1, 2011 both prior to and after her surgery. Following surgery she was advised to pursue physical therapy. On March 1, 2011, it was observed that the plaintiff could not return to work for at least six weeks (R.345-355).

The plaintiff received outpatient treatment including treatment for menorrhagia at UPMC Greenville between February 23, 2009 and March 10, 2011(R.340-342, 356-366).

In a report of a consultative examination performed on May 3, 2011, Dr. Iftikhar A. Chatha diagnosed post-surgical chronic low back pain and noted the need for extensive therapy (R.367-373).

In a residual functional capacity assessment completed on August 2, 2011, Dr. Thomas Pineo reported that the plaintiff had a lumbosacral sprain/strain and could lift two to three pounds, stand or walk for an hour or less and sit for three hours. He also observed that the plaintiff had to lie down three times a day for an hour at a time and concluded that the plaintiff had been disabled since February 1, 2011 (R.375-377, 461-463).

The plaintiff was treated on August 12, 2011 by Michael J. Namey, D.O. for back pain. Left sciatica was diagnosed and medication was prescribed (R.404-408, 458-460).

The plaintiff was treated by Anthony Elisco, D.O. between September 13, 2011 and September 28, 2011 for a urinary tract infection (R.398-403).

The plaintiff was treated at UPMC Horizon on December 15, 2011 following a motor vehicle accident. An L4 compression fracture was noted (R.378-388).

The plaintiff was treated on December 30, 2011 by Edward Uberti, D.O. following a motor vehicle accident. A mild L4 compression was observed (R.409-411).

The plaintiff was hospitalized at UPMC Presbyterian Hospital from January 31, 2011 through February 4, 2011. An L4-L5 and L5-S1 microdiscectomy was performed. On discharge activity as tolerated was permitted and medication was prescribed (R.332-339, 389-397).

The records of Alicia Baker, D.O. for the period between October 10, 2008 and March 12, 2012 reveal a normal abdomen and lumbar spine and report a hysterectomy was performed on July 30, 2009. Some improvement in the L4-L5 and L5-S1 disc bulge was noted (R.433-457).

The plaintiff was treated by Dr. Adnan A. Abla between January 19, 2011 and March 20, 2012. He performed an L4-L5 and L5-S-1 microdiscectomy and foraminotomy on February 2, 2011. Pain continued post-surgically. The fracture plaintiff sustained on December 14, 2011 appeared stable and physical therapy was to continue. On March 20, 2012 much pain improvement was noted. Medication was prescribed as well as a recommendation to return to normal activities (R.412-432).

Alicia A. Baker, D.O. treated the plaintiff on July 2, 2012 for back pain. Medication was prescribed (R.464-470).

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Commissioner must consider subjective symptoms. Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974). As the court stated in Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971):

> Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.

In Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975), the Court stated:

> Bittel seeks to help those claimants with cases that so often fall within the spirit-- but not the letter--of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question.

The applicable regulations require more explicit findings concerning the various vocational facts which the Act requires to be considered in making findings of disability in some cases. The regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether she meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether she can do his past relevant work. If not, then the residual

5

functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength she can exert in engaging in work activity), and if her impairment enables her to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

> Based on the evidence presented, the Commissioner concluded:
>
> The claimant has the following severe impairments: lumbar disc herniations status post surgery and L4 compression fracture.
>
> The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments …
>
> Listing 1.04 is not met because the record does not demonstrate compromise of a nerve root … or the spinal cord with additional findings of: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss … accompanied by sensory or reflex loss, and positive straight-leg raising or; B. Spinal arachnoiditis or; C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively …
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work …
>
> The claimant alleges disability due to back surgery. At the hearing, the claimant testified that she has back injuries that significantly limit her. She stated she underwent surgery in 2011 and she was injured in a motor vehicle accident later in 2011. According to the claimant, she still experiences back pain and pain in her legs in spite of treatment…. She stated she lies down for an hour 3-4 times per day. In terms of treatment, the claimant stated that she takes medications that do not cause side effects. She stated she also uses a TENS unit and participates in physical therapy… Finally, the claimant reported numerous activities of daily living. She reported that she takes care of her three children, attends appointments, watches television, reads, spends time with others, has no problem

getting along with others, follows instructions "good," gets along with authority figures "good," handles stress "good," is able to manage her finances and is generally independent in personal care.

After carefully consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

In terms of the objective evidence, the claimant's limited medical history is inconsistent with and unsupportive of the claimant's allegations of disability. The claimant's medical record establishes that the claimant's impairments do not prevent her from engaging in work within the residual functional capacity as stated above. The medical record shows that the claimant was significantly limited for about a 3-month period after her first back surgery and for about a 4-month period after her motor vehicle accident. However, treating notes show the claimant has made a good recovery. Nonetheless, the undersigned has given the claimant's testimony some credence in limiting her to the residual functional capacity as determined.

Specifically, the claimant underwent L4-L5 and L5-S1 microlumbar discectomy and foraminotomy for disc herniations … The claimant was noted to have immediately shown good results in lower extremity pain. The claimant was prescribed medications and advised to avoid all strenuous activity… On March 1, 2011 … Dr. Abla prescribed physical therapy and medications. He stated the claimant could not go back to work for at least 6 weeks … In April of 2011, Dr. Abla stated he was pleased with the claimant from a neurosurgical standpoint as the claimant was slowly improving. Dr. Abla decreased the claimant's physical therapy. On May 17, 2011, the claimant complained of "some stiffness." Dr. Abla determined the claimant could return to all of her normal activities because he was not placing any restrictions on the claimant…

On July 12, 2011, the claimant complained of tenderness in her back … On August 2, 2011, the claimant complained of some low back soreness. The claimant denied lower extremity numbness. Dr. Abla again stated the claimant no longer had any restrictions...On August 2, 2011, the claimant complained of back pain. Upon examination, the claimant had mild tenderness in her lumbar spine. Dr. Pineo diagnosed the claimant with ongoing low back pain related to degenerative disc disease and status-post L4-L5 and L5-S1 microdiscectomy and foraminotomy. Dr. Pineo hoped the claimant's back pain would improve. He stated the claimant was unable to return to work. On August 12, 2011 … Dr. Namey diagnosed the claimant with deteriorated left sciatica and deteriorated lumbar strain. He prescribed medications. His assessment that the claimant was

deteriorating is given little weight as it is inconsistent with Dr. Abla placing the claimant on no restrictions 10 days earlier..

The claimant's condition then temporarily worsened after being [in] a motor vehicle accident in December of 2011… Dr. Uberti diagnosed the claimant with right-sided lumbar radiculopathy and new L4 compression fracture. Dr. Uberti advised the claimant to see Dr. Abla for treatment. The claimant returned to Dr. Abla on January 17, 2012. The claimant complained of low back pain radiating down her right leg. Upon examination, the claimant exhibited lumbar muscle tightness and positive straight leg raising. Dr. Abla stated a MRI of the claimant showed a L4 fracture. Dr. Abla prescribed medications and one month of physical therapy…

In February of 2012, the claimant admitted her pain was improving to Dr. Abla… Dr. Abla stated the claimant's fracture was stable and did not require surgery. Dr. Abla recommended the claimant finish physical therapy and prescribed medications. On March 12, 2012, the claimant complained of back pain… Dr. Baker diagnosed fracture of the L4 lumbar vertebra that was improving with physical therapy and conservative management. Dr. Baker was hopeful the claimant could return to work after completing physical therapy. On March 29, 2012, the claimant denied leg pain. The claimant rated her back pain at a level of 4-5 out of 10. Dr. Abla stated the claimant could return to all of her normal activities.

Most recently, the claimant reported being "definitely a lot better" to Dr. Baker…

In addition to receiving treatment, Iftikhar A. Chatha, M.D.. performed a consultative examination of the claimant on May 3, 2011 … Dr. Chatha diagnosed the claimant with chronic low back pain, status-post disc surgery in February of 2011 with almost no relief. Dr. Chatha stated the claimant would need extensive PT/OT… The objective evidence in its entirety does not demonstrate abnormalities, which would interfere with the claimant's ability to perform the range of work identified above…

[T]he claimant's daily activities of living, which are relatively full and independent, are consistent with the above residual functional capacity assessment and are inconsistent with a disabling level of functioning...

The course of medical treatment and the use of medication in this case are also not consistent with disabling impairments…

[T]he opinion of Dr. Abla is given the most weight because it is supported by the evidence, is consistent with the record as a whole and was completed by a treating specialist…

Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform…

The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2011, through the date of this decision… (R.13-21).

The record demonstrates that the plaintiff suffered a back injury which was exacerbated by a subsequent automobile accident. While there are varying opinions as to the severity of her injuries, her treating neurosurgeon, Dr. Abla has consistently reported improvement, and except for short periods of time, no limitations upon her activities. Thus, an issue of credibility was created, the resolution of which resides with the Commissioner who determined that the treating specialist was the most credible. Diaz v. Commissioner, 577 F.3d 500. 506 (3d Cir.2009).

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. Lichtenstein v. U.P.M.C., 691F.3d 294 (3d Cir. 2012). In the instant case, there are no material factual issues in dispute, and it appears that the Commissioner's conclusion is supported by substantial evidence. For this reason the plaintiff's motion for summary judgment will be denied; the defendant's motion for summary judgment will be granted, and the decision of the Commissioner will be affirmed.

An appropriate Order will be entered.

ORDER

AND NOW, this 8th day of November, 2014, for the reasons set forth in the foregoing Memorandum the plaintiff's motion (ECF.No.11) will be DENIED; the defendant's motion (ECF No.13) will be GRANTED and the decision of the Commissioner will be AFFIRMED.

                                                                  s/ Robert C. Mitchell
                                                                  United States Magistrate Judge